IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMONT GEIGER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 21-2244 |
| | : | |
| v. | : | |
| | : | |
| C/O CURRY, MITCHEAL FARREL, | : | |
| BLANCHE CARNEY, CAPT. HARMER, | : | |
| and GOLDEN-DEVEAUX, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                     September 29, 2021

The *pro se* plaintiff is a pretrial detainee residing in a county jail who has filed a complaint under 42 U.S.C. § 1983, claiming that multiple corrections officials failed to protect him from being assaulted by other inmates, violated his due process rights relating to a disciplinary hearing held after he was cited for misconduct for fighting, and then failed to properly consider his appeal after he was found guilty of misconduct. The plaintiff has sued all defendants in their official and individual capacities.

The court has screened the complaint pursuant to 28 U.S.C. § 1915A. For the reasons discussed below, the court finds that the plaintiff has asserted plausible claims that one of the defendant correctional officers failed to protect him from harm by another inmate with whom he had fought the prior day, and that the corrections official who presided over his disciplinary hearing denied him due process because the hearing was held without allowing him the opportunity to be present or present witnesses or evidence on his behalf. The court also finds that the plaintiff failed to assert plausible claims regarding (1) the defendants' liability in their official capacities because he has not alleged any policy or custom of the county which caused the violation of his

constitutional rights, (2) any supervisory defendant's liability because he failed to allege facts that would reasonably infer that any supervisory defendant established a policy, practice, or custom which caused his injuries, (3) a failure to protect claim against a corrections officer who returned him to his cell only for him to be attacked by other inmates there because he does not allege that this officer appreciated any danger by returning him to his cell, and (4) a procedural due process claim against the individuals who received his appeals from the adverse result at his disciplinary hearing and did not act on those appeals. Although the court will dismiss this latter claim with prejudice, the court will dismiss the other claims mentioned above without prejudice and give the plaintiff an opportunity to cure the deficiencies in his pleading by filing an amended complaint.

## I.   ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Lamont Geiger ("Geiger"), commenced this action by filing an application for leave to proceed *in forma pauperis* and a complaint which the clerk of court docketed on May 14, 2021. *See* Doc. Nos. 1, 2. Geiger failed to attach a certified copy of his prison trust fund account statement to his *in forma pauperis* application, so the court entered an order on May 27, 2021, which denied the application without prejudice to Geiger either submitting the certified prison trust fund account statement or remitting the $402 filing fee and administrative fee, within 30 days of the date of the order. *See* Doc. No. 4. Geiger submitted a new *in forma pauperis* application, which the clerk of court docketed on June 30, 2021. *See* Doc. No. 6. Despite having filed this new application, Geiger paid the $402 fee on July 19, 2021. *See* Unnumbered Docket Entry Between Doc. Nos. 6 and 7. He then filed a "Declaration in Support of Preliminary Injunction and Temporary Restraining Order," which the clerk of court docketed on September 15, 2021. *See* Doc. No. 8.

Regarding the complaint, Geiger names as defendants several officials and employees of the Philadelphia Industrial Correctional Center ("PICC"): (1) Correctional Officer Curry ("CO Curry"); (2) Correctional Lieutenant Golden-Deveaux ("Lt. Golden-Deveaux"); (3) Captain Harmer, a disciplinary hearing officer ("Capt. Harmer"); (4) Michelle Farrell, Warden ("Warden Farrell");[1] and (5) Blanche Carney, Commissioner ("Commissioner Carney"). *See* Compl. at ECF p. 3. Geiger has sued all defendants in their individual and official capacities. *See id.*

The court has interpreted the complaint as Geiger's attempt to generally assert claims for deliberate indifference (failure to protect) and for violation of his due process rights with respect to his confinement. Geiger asserts that on March 5, 2021, he was housed as a pretrial detainee at PICC on "F2," which is a maximum-security unit. *See id.* at ECF p. 4. Apparently, there is a malfunction with the cell doors on the F2 unit that allows the inmates to be able to open their cell doors at will. *See id.* The defendants are all aware of this malfunction. *See id.*

At approximately 7:00 p.m., several inmates approached Geiger and asked him whether he was friends with the "rat, Dwayne Henry," and Geiger responded to the inmates by saying that Henry was his friend.[2] *See id.* One of the inmates asked Geiger whether he also knew that one of the correctional officers, T.M. Jones, had a hit out on Mr. Henry. *See id.* Geiger told this inmate that he did not care about this information and started to walk away from the inmate. *See id.*

Once Geiger started walking away, another inmate informed him that they needed to fight Geiger since he was friends with Mr. Henry. *See id.* The inmate told Geiger that they needed to fight one on one, and if Geiger did not agree to this, the group of inmates was going to jump him.

---

[1] Geiger has identified this defendant as "Mitcheal Farrell . . . a WARDEN employed at (PICC)" in the complaint. *See* Compl. at ECF p. 3, Doc. No. 2. Geiger appears to have misspelled "Michele Farrell," who is the Warden at PICC, and the court construes the complaint as naming "Michele Farrell" as the defendant.

[2] Ironically, the undersigned is also assigned to an action filed by Mr. Henry where he complains about, *inter alia*, actions taken toward him by correctional officers and inmates at PICC. *See Henry v. Rosati, et al.*, Civ. A. No. 20-5115 (E.D. Pa.).

*See id.* Because Geiger did not want to get jumped, he agreed to a one-on-one fight in "cell 40" after first informing Mr. Henry of the situation. *Id.*

Geiger went to cell 40 and fought this other inmate for approximately 5 minutes. *See id.* After this five-minute period, the cell door opened and approximately six inmates entered the cell and started attacking Geiger. *See id.* During this attack, Mr. Henry and another inmate, Mr. Hall, entered the cell and pulled the other inmates away from Geiger. *See id.* Mr. Henry and Mr. Hall said that the correctional officers were coming, which caused the attacking inmates to leave the cell. *See id.*

Now that he had a chance to leave, Geiger went to Mr. Henry and Mr. Hall's cell to clean up the blood which was covering his face and body. *See id.* at ECF p. 5. After cleaning up, Geiger left this cell and attempted to return to his own cell. *See id.*

While Geiger was walking to his cell, Correctional Officer Kilson ("CO Kilson") called him over and asked him why he was covered in blood. *See id.* Before Geiger could answer him, CO Kilson directed Geiger to leave the unit and go into the hallway. *See id.* While in the hallway, a Sgt. Thomas advised Geiger that she would be reviewing the video footage to determine why he was covered in blood. *See id.* Sgt. Thomas then walked away from Geiger. *See id.*

After several minutes had passed, Lt. Golden-Deveaux approached Geiger and said that she saw the video footage and knew that he had been fighting. *See id.* Lt. Golden-Deveaux also stated that Geiger would be written up for this incident. *See id.* Geiger was then escorted to the medical department to be treated for his "numerous injuries." *See id.*

4

Following treatment by the medical staff, Geiger was returned to the F2 unit and placed in his cell. *See id.* Sgt. Thomas then came to Geiger's cell and presented him with a misconduct report, which noted that there was video footage of the incident.[3] *See id.*

On March 6, 2021, at approximately 11:20 a.m., CO Curry came to Geiger's cell and asked him whether he had been fighting the prior day. *See id.* at ECF p. 6. Geiger admitted to CO Curry that he had been fighting. *See id.* At this point, CO Curry said, "[w]ell get ready because this is round 2," and then opened Geiger's cell door. *See id.*

Geiger exited his cell and then saw one of the inmates who had attacked him the day before. *See id.* Geiger did not want to fight again, so he returned inside his cell. *See id.* Geiger attempted to close his cell door, but before he could do so four inmates that had been part of the group who attacked him the prior day ran into his cell shouting "round 2" and started attacking him again. *See id.* While attempting to defend himself, Geiger "pulled out [his] homemade knife and began swinging it at the other inmates." *Id.* CO Currey then sprayed pepper spray into his cell, which caused the other inmates to leave the cell. *See id.* Soon thereafter, other correctional officers arrived at Geiger's cell, where they handcuffed him and escorted him to the medical department. *See id.* Following treatment for his "numerous injuries," Geiger was escorted to another housing unit and was served with another misconduct for fighting.[4] *See id.*

At approximately noon on March 12, 2021, Correctional Officer T.M. Jones handed Geiger two disciplinary summary reports, each of them noting that Capt. Harmer had held a disciplinary hearing outside of Geiger's presence. *See id.* at ECF p. 7. Apparently, Capt. Hammer had found

---

[3] Geiger purports to attach a copy of this misconduct report to the complaint, but this report is not attached. *See* Compl. at ECF p. 5 ("Sgt [sic] Thomas returned to plaintiff [sic] cell and served plaintiff a misconduct report which narrated all the above and noted that there was video footage of the whole incident. (Ex A)").

[4] As with the other misconduct, Geiger purports to attach a copy of the report to the complaint, but he failed to do so. *See* Compl. at ECF p. 6 ("Plaintiff was served another misconduct for fighting etc[.] base [sic] on the above – describe [sic] events. (Ex B)").

Geiger "guilty of all charges" and had sentenced him to 60 days for each disciplinary infraction, for a total of 120 days. *See id.* Geiger asserts that there was no basis to find him guilty. *See id.* In addition, he avers that "no disciplinary hearing officer is noted or signed these documents" and the warden had not reviewed them. *See id.*

On the same day, Geiger appealed from these disciplinary determinations to Warden Farrell, alleging that his due process rights were violated. *See id.* Warden Farrell has not yet answered this appeal. *See id.* After waiting 30 days for a response from Warden Farrell, Geiger filed an appeal to Commissioner Carney, which has also not yet been answered. *See id.*

Regarding his causes of action, Geiger asserts that CO Curry was deliberately indifferent when she allowed another inmate out of his cell even though she was aware of the prior altercation between that inmate and Geiger. *See id.* at ECF p. 8. Geiger also avers that CO Curry's statement to him that he needed to get ready for "round 2," constituted deliberate indifference. *See id.*

Geiger also claims that Lt. Golden-Deveaux was deliberately indifferent by failing to protect him from harm despite knowing that he was involved in a multi-inmate fight. *See id.* at ECF p. 7. He also asserts that Lt. Golden-Deveaux was deliberately indifferent by allowing him to be placed back on the F2 unit after she had witnessed the video footage of the altercation. *See id.*

As for Warden Farrell and Commissioner Carney, Geiger alleges that they failed to act with respect to the "known pattern" of inmates being denied due process by Capt. Harmer. *See id.* at ECF p. 8. Geiger contends that he was denied due process when Capt. Harmer found him guilty of all charges without an opportunity to defend himself at a hearing or call witnesses. *See id.* He further asserts that Capt. Harmer did not provide him with an adequate written disposition of the charges against him. *See id.*

Concerning all named defendants, Geiger asserts that they were deliberately indifferent for failing to stop the "known pattern" of inmates leaving their respective cells because of the cell door malfunction on the F2 unit. *See id.* He asserts that their failure to take corrective action contributed to and caused him to experience violations of his constitutional rights. *See id.* Geiger seeks an injunctive order to release him from "the hole," and place him back in general population, with the restoration of all rights and privileges. *See id.* at ECF p. 9. Geiger also seeks compensatory and punitive damages from all named defendants. *See id.*

## II.    DISCUSSION

### A.    <u>Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915A</u>

Geiger has paid the filing fee for this case.[5] *See* Unnumbered Docket Entry After Doc. No. 5. Nonetheless, because Geiger is a prisoner, the court has the authority to screen his complaint under 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that district courts have authority to screen prisoner's complaint pursuant to 28 U.S.C. § 1915A(b)(1), even if prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the court must dismiss a complaint or any portion therefor that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

The standard for dismissing a complaint for failure to state a claim pursuant to section 1915A(b)(1) is identical to the legal standard used when ruling on motions to dismiss under Federal

---

[5] Due to Geiger paying the fee, the court will be denying his newest *in forma pauperis* application as moot.

Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, No. CIV. A. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997) ("The Court adopts the familiar standard for Rule 12(b)(6) of the Federal Rules of Civil Procedure in determining whether the complaint fails to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1)."); *Robertson v. McCullough*, 739 F. App'x 932, 936 (10th Cir. 2018) ("To evaluate the sufficiency of a complaint dismissed under 28 U.S.C. § 1915A(b), we apply the same standard applied under Federal Rule of Civil Procedure 12(b)(6)."); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted). In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt. And we 'apply the relevant legal principle even when the complaint has failed to name it.' Yet 'pro se litigants must still allege sufficient facts in their complaints to support a claim.'" (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Attorney Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

## B.      <u>Analysis</u>

Geiger is seeking relief in this case under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). As discussed below, Geiger has failed to allege a plausible section 1983 claim against any defendant.

### 1.      **Official Capacity Claims**

As indicated above, Geiger asserts section 1983 claims against all defendants in their personal and official capacities. A plaintiff suing under section 1983 can assert claims against individuals in their individual and official capacities. Individual capacity claims under section 1983 "seek to recover money from a government official, as an individual, for acts performed under color of state law." *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988). Official capacity claims "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). That is because "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. "A

judgment against a public servant 'in his official capacity' imposes liability on the entity that [the public servant] represents[.]" *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

Based on the above, to plausibly assert a claim against the defendants in this case in their official capacities, Geiger must include sufficient allegations that would allow for liability against the municipality which employs the individual defendants, namely, the City of Philadelphia. *See Thomas v. City of Chester*, Civ. A. No. 15-3955, 2016 WL 1106900, at *2 (E.D. Pa. Mar. 21, 2016) ("A suit for damages against an individual municipal employee in his or her 'official capacity' is not cognizable unless the requirements of *Monell* are met." (citation omitted)); *see also McHugh v. Koons*, Civ. A. No. 14-7165, 2015 WL 9489593, at *9 (E.D. Pa. Dec. 30, 2015) ("An official capacity suit against a prosecutor is essentially a municipal liability claim against the District Attorney's Office[ ] pursuant to *Monell*."). To assert plausible claims against the City of Philadelphia, Geiger must allege that it has a policy or custom which caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694 ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Thus, Geiger "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).

A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not

specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." *Id.* (internal quotation marks and alterations omitted). Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz*, 915 F.2d at 850 (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").

In addition,

[t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is there "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice is likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg*, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (alterations in original) (internal footnote omitted).

Here, Geiger does not include any allegations in the complaint relating to a custom or policy by which he may maintain official capacity claims against the defendants. He has also failed to allege that any defendant had actual knowledge of prior similar conduct or failed to prevent the repetition of such conduct, and that this failure led to his injury. Instead, Geiger merely mentions a "known pattern" of inmates leaving their respective cells because of a cell door malfunction on the F2 unit and a "known pattern" of inmates being due process by Capt. Harmer.[6] *See, e.g.*, Compl. at ECF p. 8. This is insufficient to assert a plausible *Monell* claim since Geiger fails to allege that the City of Philadelphia had a policy or custom to maltreat prisoners, acted deliberately in accordance with that policy or custom, and the policy or custom was the moving force behind the deprivation. The lone allegations that there was a "known pattern" does not state a plausible *Monell* claim. *See Junne v. Atl. City Med. Ctr.*, Civ. A. No. 07-5262, 2008 WL 1901111, at *11 (D.N.J. Apr. 25, 2008) (holding that "'mere knowledge' allegations are insufficient to state a

---

[6] Geiger asserts that Capt. Harmer has denied due process to "inmates." Compl. at ECF p. 8. To the extent Geiger's claim attempts to assert rights of other inmates, the court must dismiss it. Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts. Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))). Although individuals may represent themselves *pro se*, a non-attorney may not represent other parties in federal court. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). This principle has been applied by the United States Supreme Court, the United States Court of Appeals for the Third Circuit, and other courts in various contexts. *See, e.g.*, *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993) (recognizing that corporations must be represented by counsel and that "save in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships or associations to appear in federal court otherwise through a licensed attorney" (footnote omitted)); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 667 (9th Cir. 2008) (holding that non-lawyer could not litigate *pro se* on behalf of ERISA plan); *Osei-Afriyie*, 937 F.2d at 882 ("We hold that Osei-Afriyie, a non-lawyer appearing *pro se*, was not entitled to play the role of attorney for his children in federal court."); *Phillips v. Tobin*, 548 F.2d 408, 411–12 (2d Cir. 1976) (holding that non-attorney could not appear *pro se* to conduct shareholder's derivative suit). Accordingly, the court will deem the allegations as merely background information to Geiger's own claim.

constitutional claim" under *Monell*); *E.C. v. U.S.D. 385 Andover*, Civ. A. No. 18-1106-EFM, 2019 WL 1922173, at *6 (D. Kan. Apr. 30, 2019) ("The Court is not persuaded that USD 385's mere knowledge—if any—of the [school district]'s disciplinary actions sufficiently evinces a policy, practice, or custom violating the Constitution under § 1983."). Nonetheless, since the court cannot say at this time that Geiger can never assert a plausible official capacity/*Monell* claim, the court will dismiss the official capacity claims without prejudice and Geiger will have an opportunity to file an amended complaint to attempt to cure the defects the court has identified. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (explaining that district court ordinarily must grant leave to amend, even without plaintiff requesting leave to amend, "unless amendment would be inequitable or futile").

### 2.    Supervisory Liability Claims

Geiger claims that the defendants' failure to take disciplinary action to curb the "known pattern" of "inmates popping out" of their cells constituted deliberate indifference to his safety and caused the violation of his constitutional rights. *See* Compl. at ECF p. 8. Geiger also avers that Warden Farrell and Commissioner Carney failed to take any action to cease the "known pattern" of "inmates being denied due process" by Capt. Harmer. *See id.* To the extent that Geiger is attempting to plead claims supervisory liability, his attempt fails.

Ordinarily, a plaintiff alleging that an individual defendant's own conduct violated the Constitution. *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution."). If a plaintiff seeks to hold a supervisor liable for the unconstitutional acts by subordinates, there are two theories of supervisory liability: (1) "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and (2) "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted).

Geiger's conclusory assertions, without more, are insufficient to state plausible claims of supervisory liability. *See Aruanno v. Corzine*, 687 F. App'x 226, 229 (3d Cir. 2017) (per curiam) ("Aruanno's claims that general conditions violated his constitutional rights might be construed as alleging that the supervisors failed to train, supervise, or discipline their subordinates. But Aruanno did not show that the Defendants were aware of the violations alleged in his complaint, either before or after they occurred." (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001))); *Argueta v. U.S. Immigr. and Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011) (explaining that "broad allegations regarding the existence of a 'culture of lawlessness'" were essentially conclusory allegations that deserve "little if any weight" in determining whether plaintiff stated plausible claim for relief). Geiger has not alleged facts from which it can plausibly be inferred that any of the supervisory defendants established a policy, practice, or custom that caused his injury. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (explaining that "a complaint must do more than allege the plaintiff's entitlement to relief," rather, "[a] complaint has to 'show' such an entitlement with its facts"); *see also Harris v. Peer*, Civ. No. 20-9461 (RMB-

AMD), 2020 WL 7707021, at *2 (D.N.J. Dec. 29, 2020) (finding plaintiff's allegation that warden failed to respond to one prior instance of alleged excessive force by defendant corrections officer insufficient to establish that warden established a custom of permitting excessive force to go unpunished, with deliberate indifference to risk of constitutional violation by subordinate).

Despite finding that Geiger has failed to state a plausible claim for supervisory liability in the complaint, the court cannot state that Geiger can never assert a plausible claim against the defendants. Therefore, the court will dismiss the claims against them without prejudice and allow Geiger an opportunity to file an amended complaint if he can cure the defects in his supervisory liability claims.

### 3.      Failure to Protect

Geiger asserts that both CO Curry and Lt. Golden-Deveaux failed to protect him from harm despite knowing that he was previously involved in a multi-inmate fight. *See* Compl. at ECF p. 7. Specifically, Geiger avers that CO Curry was deliberately indifferent when she told him to "get ready for round 2," letting him and another inmate out of their cells despite her knowledge of the prior altercation between them. *Id.* at ECF p. 8. Geiger asserts that Lt. Golden-Deveaux was deliberately indifferent by placing him back on the F2 unit after she had witnessed video footage of a prior altercation. *See id.* at ECF p. 7. The court interprets these claims as relating to the conditions of Geiger's confinement.

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment applies to claims by pretrial detainees.  *See Hubbard v. Taylor (Hubbard I)*, 399 F.3d 150, 166 (3d Cir. 2005). Because Geiger alleges that he is a pretrial detainee, the court will analyze his claim under the Fourteenth Amendment.

To establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee plaintiff would have to plausibly allege that the challenged conditions of confinement amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."). When analyzing whether a condition of confinement amounts to punishment, the inquiry generally turns on whether the challenged conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id.* at 538–39 ("A court must decide whether the [particular restriction or condition accompanying pretrial detention] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."); *Hubbard I*, 399 F.3d at 158 (discussing analysis of whether condition of confinement constitutes punishment for Fourteenth Amendment purposes).[7] In addition, the court should consider the totality of the circumstances in assessing whether a prisoner's conditions of confinement violate the Fourteenth Amendment. *See Hubbard v. Taylor (Hubbard II)*, 538 F.3d 229, 236, 238 (3d Cir. 2008) (examining totality of circumstances to determine whether conditions of confinement constitute Fourteenth Amendment violation); *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) (explaining that "to determine whether conditions

---

[7] The *Bell* Court also explained:

> Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

441 U.S. at 538–39 (internal quotation marks, citations, and footnote omitted).

of confinement violate the Eighth Amendment, it is necessary to examine the totality of the conditions at the institution"); *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 1000–01 (3d Cir. 1983) (discussing that "the overall length of confinement is only one factor among several that must be considered by a district court in evaluating the totality of circumstances relevant to any alleged constitutional deficiency in shelter").

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotation marks and alterations omitted). In general, when alleging a sufficiently culpable state of mind, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *cf. Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners, and pretrial detainees[.]" (internal citations omitted)).

In the context of suits against prison officials for failure to protect an inmate from harm caused by other inmates, if a prison official is deliberately indifferent to a pervasive risk of harm to an inmate, the inmate may obtain relief in a section 1983 action. *See Young v. Quinlan*, 960 F.2d 351, 361 (3d Cir. 1992), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000). In *Young*, the Third Circuit expressly found that summary judgment

against an inmate's claim was inappropriate where prison officials were warned by an inmate that the inmate was concerned about his safety and it was undisputed that the prison officials, aware of the warning, either did nothing or their response, if any, came too late to be of any help to the inmate. 960 F.2d at 363.

In elaborating on the deliberate indifference standard, the Third Circuit stated that "a prison official is deliberately indifferent when [the official] knows or should have known of a sufficiently serious danger to an inmate." *Id.* at 361. Noting that the phrase "should have known" is a term of art, the court went on to state that the phrase "should have known" "[d]oes not refer to a failure to note a risk that would be perceived with the use of ordinary prudence. It connotes something more than a negligent failure to appreciate the risk . . ., though something less than subjective appreciation of that risk." *Id.* (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017 (3d Cir. 1991)). Further, "the strong likelihood of [harm] must be 'so obvious that a lay person would easily recognize the necessity for' preventative action." *Id.* (citing *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). There must not only be a great risk of injury, but it also must be so apparent "that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of [the custodian's] charges." *Id.* (quoting *Colburn*, 946 F.2d at 1025).

Given CO Curry's alleged statement to Geiger to "get ready for round 2" and Geiger's assertions that CO Curry let him and another inmate out of their cells knowing that they were involved in a fight the day prior, the court finds that Geiger's allegations are sufficient to pass screening under section 1915(e)(2). Geiger's allegations relating to Lt. Golden-Deveaux are a different story. His statement that this defendant was deliberately indifferent by placing him back on the F2 unit after witnessing video footage of a prior altercation fails to allege a claim that is plausible on its face. Geiger does not include any facts as to Lt. Golden-Deveaux's appreciation

of any alleged danger of placing him back on the F2 unit, and he does not allege whether that action was deliberate. Accordingly, the court must dismiss the failure to protect claim against Lt. Golden-Deveaux. However, as with Geiger's other dismissed claims so far, the court cannot say that allowing him to amend would be futile. As such, the court will dismiss his failure to protect claim against Lt. Golden-Deveaux without prejudice and provide him with the opportunity to amend the complaint.

### 4.     Procedural Due Process

Geiger avers that Capt. Harmer violated his procedural due process rights when he deprived Geiger of the opportunity to defend himself at the disciplinary hearing which was held in his absence. *See* Compl. at ECF p. 7. In addition to not being present at the hearing, Geiger was unable to call witnesses or present any evidence in his defense. *See id.* Geiger further avers that he was not provided with an adequate written disposition of the charges against him. *See id.*

"Generally, prisons may sanction a pretrial detainee for misconduct that [the detainee] commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003–06 (7th Cir. 1999)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed withing providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)." *Id.* (footnote omitted). "These protections include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563–66); *see also Quiero v. Ott*, 799 F. App'x 144, 146 n.6 (3d Cir. 2020) (per curiam) (describing *Wolff*'s requirements).

Construing the complaint liberally and giving Geiger the benefit of all reasonable inferences, the court finds that he has sufficiently stated a claim for a procedural due process violation against Capt. Harmer.

Geiger also alleges that Warden Farrell and Commissioner Carney failed to respond to his appeals. *See* Compl. at ECF p. 7. To the extent that Geiger seeks to assert a claim based on Warden Farrell and Commissioner Carney's failure to respond, the court will dismiss any such claim with prejudice. In this regard, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. "[A] right to appeal disciplinary convictions is not within the narrow set of due process rights delineated in *Wolff*." *Crist v. Phelps*, Civ. No. 09-957-SLR, 2010 WL 1704401, at *4 n.7 (D. Del. Apr. 27, 2010); *see also Counterman v. Fauver*, Civ. A. No. 83-4839, 1989 WL 200954, at *6 (D.N.J. Nov. 24, 1989) ("Even assuming plaintiff was denied the opportunity to appeal, because there is no constitutional right to appeal a disciplinary decision, there is no violation of plaintiff's rights."); *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983) ("Plaintiff also alleges violation of his due process rights with respect to the Program Review Committee's affirmance of the Hearing Committee's decision. Administrative review of prison disciplinary hearings is not constitutionally guaranteed; therefore, plaintiff's claims with respect to the Program Review Committee's decision do not rise to constitutional significance." (citations omitted)). Consequently, Geiger had no constitutional right to appeal the findings of Capt. Harmer, and the court will dismiss with prejudice any claims based on an alleged failure to respond to his appeals.

## III.   CONCLUSION

For the foregoing reasons, any claims based on the failure to respond to Geiger's appeals are dismissed with prejudice. The court will also dismiss without prejudice the following claims

for the failure to state a claim: (1) official capacity and supervisory liability claims against all defendants; and (2) deliberate indifference (failure to protect) claims against Lt. Golden-Deveaux. Because the court cannot say at this time that Geiger can never assert plausible claims, the court will allow Geiger to amend the complaint to the extent he can cure the deficiencies with the claims the court is dismissing without prejudice. Also, to the extent that Geiger has sought preliminary injunctive relief, the court will dismiss this claim without prejudice at this time.[8]

The court is prepared to direct service of the complaint on Geiger's remaining claims. Geiger may notify the court that he wishes to proceed on these claims only. If Geiger chooses not to file an amended complaint, the Court will direct service only as follows: (1) on CO Curry regarding Geiger's failure to protect claim under the Fourteenth Amendment, and (2) on Capt. Harmer concerning the procedural due process claim.

---

[8] As indicated above, Geiger filed a "Declaration in Support of Preliminary Injunction and Temporary Restraining Order," which the clerk of court docketed on September 15, 2021. *See* Doc. No. 8. In this document, Geiger asserts that he previously requested an order to show cause for a preliminary injunction and temporary restraining order. *See id.* at ECF p. 1. This court is unaware of any such request and one is not docketed in this matter.

Nevertheless, Geiger asserts in his declaration that PICC officials are denying him access to the law library and they have had his legal mail opened or read outside of his presence. *See id.* He also states that prison officials are retaliating against him for filing this action. *See id.* at ECF p. 2. He asserts that he has written the United States Marshals to obtain USM-285 forms, but he has not received a response. *See id.* He further states that he is "being denied all access to the law library, copying, shower, rec, and legal phone calls." *Id.*

If Geiger intends to seek preliminary injunctive relief, he must do so by motion. As Geiger is proceeding *pro se*, the court will interpret the declaration as a motion and deny it without prejudice. In general, there must be "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint" for the court to grant preliminary injunctive relief. *See Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010) (per curiam). Thus, "the injury claimed in the motion for preliminary injunctive relief must relate to the conduct alleged and permanent relief sought in the plaintiff's complaint." *James v. Varano*, Civ. No. 1:14-CV-1951, 2017 WL 895569, at *3 (M.D. Pa. Mar. 7, 2017). Here, there is simply no relationship between the claims in the complaint (especially the ones which have survived this screening) and the claims in the Declaration. Simply alleging retaliation for filing this lawsuit is insufficient to establish a sufficient connection for the court to grant preliminary injunctive relief.

As an additional note, should Geiger decide to take another shot at obtaining preliminary injunctive relief based on averments included in his declaration, the court notes that he will have to, among other things, show that he has a reasonable likelihood of success on the merits. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (referencing standard for obtaining preliminary injunction, which includes a plaintiff demonstrating "a reasonable probability of eventual success in the litigation" (citation omitted)). For example, based on his claim of retaliation, Geiger would have to potentially show that prison officials are denying him showers because they are retaliating against him for filing this action and not because, hypothetically, the prison has taken certain precautionary measures to stop the spread of COVID-19. Geiger should be prepared to pursue such a claim with facts and not simply conjecture or speculation to the extent he would include it in an amended complaint and then seek preliminary injunctive relief on this claim.

The court will issue a separate order, which will provide further information about options for proceeding in this case.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.